(85 Misc. Rep. 372)

### JOSEPHSOHN v. GENS.

(Supreme Court, Appellate Term, First Department.   May 7, 1914.)

**1. BILLS AND NOTES (§ 426*)—CHECKS—PAYMENT—EFFECT.**

Where one obtained a check from another by false pretenses, and the consideration for which the maker signed the check never passed to him, the former was primarily liable to an indorsee, and a payment by him to the indorsee discharged the check as against all parties, within Negotiable Instruments Law (Consol. Laws, c. 38) § 202, declaring that the payment of an instrument by a party secondarily liable is not a discharge thereof, except where it was made for an accommodation and has been paid by the party accommodated.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1223–1232; Dec. Dig. § 426.*]

**2. TRIAL (§ 143*)—EVIDENCE—QUESTIONS FOR JURY.**

Where the evidence was conflicting on the issues of fact, it was error to direct judgment on the issues.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 342, 343; Dec. Dig. § 143.*]

Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by Michael Josephsohn against Frank Gens. From a judgment of dismissal, after trial before a jury, plaintiff appeals. Reversed, and new trial granted.

See, also, 141 N. Y. Supp. 522.

Argued April term, 1914, before GUY, PAGE, and WHITAKER, JJ.

Adolph Waxenbaum, of New York City, for appellant.

I. Gainsburg, of New York City, for respondent.

PAGE, J.   On June 25, 1912, one Solomon Jam applied to the defendant, Frank Gens, to advance him $200 upon the security of two notes for $100 each, made by Jam payable to his own order.   Gens agreed to advance $200 upon the notes, provided Jam would procure the indorsement upon them of one Max Bierman, a cousin of Jam, who was a responsible merchant having a place of business at 75 Avenue A, New York.   Jam returned with the notes indorsed "Max Bierman," whereupon Gens drew a check, dated June 25, 1912, for $200, payable to the order of Max Bierman, and delivered it to Jam. Jam wrote the indorsement of Max Bierman on the check, signed his own indorsement to it, and delivered it to the plaintiff, M. Josephsohn, from whom he received $198 in cash.

It was subsequently discovered by Gens, the drawer of the check, that there were two men named Max Bierman, both relatives of Jam, one of whom was engaged in business at 75 Avenue A, and the other was a workingman, with no credit, who resided on East 110th street, and that the one who had indorsed the notes for Jam was the Max Bierman of East 110th street.   Gens, upon discovering this fact, the same day stopped payment upon his check, and he and his stenographer both testify that, before the check had been cashed with Joseph-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sohn, the stenographer went to Josephsohn, by whom Jam had been previously told by Gens that he might have the check cashed, and warned him not to cash it, as the notes for which it was given were bad. This was denied by Josephsohn, who swore that he received no notice of the infirmity of the check, either from Gens or his stenographer.

As a further defense to the check, however, it was shown that on July 8, 1912, Jam, having been pressed for payment by Josephsohn, paid him $50 on account of the check, and made and executed to Josephsohn a bill of sale, absolute upon its face, by which Jam sold to Josephsohn for $150 his cloakshop at 317 Canal street, including his stock of braids and buttons, five Singer sewing machines, and two book accounts due him, aggregating $100. It was further proved that Jam had paid an additional $60 on account of the note to Josephsohn since the commencement of the action. The plaintiff's claim was accordingly reduced to $90 by consent.

Upon a former trial herein the complaint was dismissed, on the ground that this assignment or bill of sale was equivalent to payment by Jam of the entire check, and discharged it. The motion to dismiss was made after the plaintiff had offered to prove that the bill of sale was made as collateral security only by Jam, to hold Josephsohn harmless in the event of his failure to collect from Gens. This evidence was excluded, on the ground that it offended the parol evidence rule. On appeal to this court, the judgment was reversed, and the case sent back for a new trial, upon the ground that the learned trial justice committed error in excluding evidence of the nature of the transaction to show that it was as collateral security that the bill of sale was made. Josephsohn v. Gens, 141 N. Y. Supp. 522.

This is a third trial of the action, a second trial having resulted in a judgment for the defendant upon the issue of whether or not the bill of sale to Jam was an absolute one and a discharge of the check; the said judgment having been subsequently set aside and a new trial ordered by the learned trial justice before whom it was heard. The principal points raised by the appellant upon this appeal are: First, that, assuming the bill of Jam to the plaintiff to have been absolute, and in payment of his obligation to the plaintiff as indorser of the check, this payment would not act as a discharge of the liability of Gens as maker; and, secondly, that an issue of fact was raised as to the nature of the bill of sale, which should have been submitted to the jury.

[1] As to the first proposition, it seems to be well-settled law that payment made to a holder of a negotiable instrument, by an indorser, where the note was executed by the maker for value, does not inure to the benefit of the maker, and in an action against him by the holder he is liable for the whole amount thereof, notwithstanding the payment. Negotiable Instruments Law, § 202; Madison Square Bank v. Pierce, 137 N. Y. 444, 33 N. E. 557, 20 L. R. A. 335, 33 Am. St. Rep. 751. This rule of law, however, is limited to the case where the indorser, who has paid the note or instrument, is only secondarily liable, and the primary obligation is upon the maker. An express ex-

ception is made, both in the statute above cited and in the cases which have construed it, of payment by a party for whose accommodation the instrument was made. In the case at bar it is undisputed that Jam obtained the check from Gens by false pretenses, and that the consideration for which Gens intended to sign it, namely, two notes indorsed by Max Bierman of 75 Avenue A, never actually passed to Gens. The entire transaction was, therefore, for the accommodation of Jam, and as between the various parties to the instrument, except the holder in due course, there was no liability whatever in Gens. The party actually primarily liable was Jam, and payment by him would undoubtedly discharge the check as against all parties.

[2] As to the second question, however, I am of the opinion that the evidence was conflicting, and two distinct issues of fact were raised, which should have been submitted to the jury: First, whether or not the bill of sale given by Jam to Josephsohn was absolute, and in payment of the note; and, second, whether or not Josephsohn had notice of the fraud of Jam, or of some infirmity in the check before he cashed it. It was error for the learned trial justice to direct judgment upon these issues.

The judgment must therefore be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.